Harper, J.
We feel no disposition to depart from the rule laid down in The State v. Davis and Hanna, 2 Bail. 558. The ground of that decision is, that neither of the several statutes which speak of “ negroes, mulattoes and persons of co-lour,” nor the constitution of the State, which restricts political privileges to “ free white men,” give any definition of those terms, nor is there any known technical meaning affixed to them. We must of necessity then suppose them to have been used in their ordinary and popular signification; and to the ordinary and popular signification we must resort for the interpretation of the laws. From what possible source could a definition be drawn which would make a person who has no visible mixture of negro blood, as evidenced by complexion, features or favour, and who is received in society and generally reputed to be a free white person, a mulatto or person of color ? Indeed it would be an absurdity in terms to say that such an one is, in the popular sense of the word, a person of colour. If we should say that such an one is to be regarded as a person of colour, on account of any mixture of negro blood, however slight or remote, we should be making, instead of declaring the law, and making a very cruel and mischievous law. It is this which makes the question peculiarly proper for a jury. It belongs to them to settle questions of common usage and the meaning of popular terms, though their decisions may be matured into rules of law.
The principal argument urged against the rule we have adopted, is its want of precision. We cannot say what admixture of negro blood will make a coloured person, and, by a jury, one may be found a coloured person, while another of the same degree of blood may be declared a white man. In general it is' very desirable that rules of law should be certain and pre *616 cise. But it is not always practicable, nor is it practicable in this instance. Nor do Í know that it is desirable. The condition of the individual is not to be determined solely by the distinct and visible mixture of negro blood, but by reputation, by his reception into society, and his having commonly exercised the privileges of a white man. But his admission to these privileges, regulated by the public opinion of the community in which he lives, will very much depend on his own character and conduct; and it may be well and proper, that a man of worth, honesty, industry and respectability, should have the rank of a white man, while a vagabond of the same degree of blood should be confined to the inferior caste. It will be a stimulus to the good conduct of these persons, and security for their fidelity as citizens. It is hardly necessary to say that a slave cannot be a white man. In the case before us, the grand, father of the witnesses in question exercised all the privileges of a free white person ; his descendants have continued to do so till the present day. Shall time and prescription, which secure and consecrate all other rights, have no effect in fixing the civil condition of an individual ?
It is perhaps not necessary to advert particularly to some of the arguments which were urged. It seemed to be argued as if there were no necessary connexion between the degree of negro blood and its appearance in the person ; that an individual of unmixed European descent, may approach to the negro features and complexion, and one having a large proportion of negro blood may be free from these distinctive marks. But in general this is not so. I doubt whether a person of unmixed European blood, though he might be darker than many a colored person, would ever be mistaken for one. And it can hardly happen that a person having more than an eighth of negro blood will not betray it in his person. It is true that some indivividuals retain the distinctive marks of their descent much longer than others, and it may be that one who has lost these marks in his own person, may see them re-appear in some degree in his children. But if such cases should occur, a jury will be aided by the circumstances of reputation <fcc., to which I have referred, and if there should be extraordinary departures from the general course of mixture, the questions arising out of them may, I have no doubt, be satisfactorily determined by the jury. It is indeed rather a question of fact for them, than referable to any definitive rule of law.
We wish it to be understood that this matter is regarded as settled, that it is not every admixture of negro blood, however slight and remote, that will make a person of colour, within the meaning of the law; and that this Court will very rarely *617 feel itself authorised to interfere with the verdict of a jury. I think it to he regretted that the question was made in the present case, and hope that the same question will not be again made under the same circumstances. It is doing unnecessary violence to the feelings of persons, who in this instance are admitted to be of much worth and respectability.
No other ground in the case was seriously urged, or need to be considered.
The motion is dismissed.
Johnson and O’Neall, Js. concurred.